**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| THE SCOULAR COMPANY, INC., a Nebraska corporation authorized to do business in the State of Florida, | Case No. 8:19-cv-2592 |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| FARREN DAKIN DAIRY, LLC, a Florida limited liability corporation f/k/a Farren Dakin Dairy, Inc., FARREN R. DAKIN, and CHRISTINA M. DAKIN, | |
| Defendants. | |

COMES NOW Plaintiff, THE SCOULAR COMPANY, INC., a Nebraska corporation authorized to do business in the State of Florida, and for its Complaint against Defendants FARREN DAKEN DAIRY, LLC, a Florida limited liability corporation f/k/a Farren Dakin Dairy, Inc., FARREN R. DAKIN, and CHRISTINA M. DAKIN, alleges:

## GENERAL ALLEGATIONS

1.     Plaintiff, The Scoular Company, Inc. ("Scoular"), is a Nebraska corporation authorized to do business in the State of Florida, with its principal place of business at 2027 Dodge Street, Omaha, NE 68102.

2.     Defendant, FARREN DAKIN DAIRY, LLC ("Dairy"), is a Florida Limited Liability Company, formerly known as Farren Dakin Dairy, Inc., with its principal place of business at 40102 SR 70 E., Myakka City, FL 34251.

3.     Defendants FARREN R. DAKIN, and CHRISTINA M. DAKIN are residents of the State of Florida, and are the sole members of Dairy.

1

4.      This Court has subject matter jurisdiction of this controversy under 28 U.S.C. § 1332 as Scoular seeks damages exceeding $75,000, exclusive of costs, interests, and reasonable attorneys' fees, and the suit is between citizens of different states.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (2) as all defendants are residents of Florida, and a substantial part of the events or omissions giving rise to Scoular's claims occurred in the Middle District of Florida.

6.      At all times relevant to the instant Complaint, Farren Dakin Dairy, Inc. operated a dairy.

7.      Scoular is in the business of selling feed for livestock.

8.      Farren Dakin Dairy, Inc. and Scoular had an ongoing contractual relationship in which Scoular would sell feed to Farren Dakin Dairy, Inc. under multiple contracts, which sometimes involved Scoular extending trade credit to Farren Dakin Dairy, Inc.

9.      To secure its purchases from Scoular, on November 30, 2009, Defendants Farren R. Dakin and Christina M. Dakin (principals of Farren Dakin Dairy, Inc.), executed a ***continuing*** Personal Guaranty which included the following:

> For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of and to induce financial accommodations of any kind, with or without security, given or to be given or continued at any time and from time to time by The Scoular Company ("Scoular") to or for the account of Farren Dakin Dairy, Inc., a Florida Corporation ("Customer"), the undersigned absolutely and unconditionally, jointly and severally, guarantee to Scoular the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of any and all indebtedness, obligations and liabilities of the Customer (and any and all successors of Customer) to Scoular, now or hereafter existing, absolute or contingent, independent, joint, several or joint and several, secured or unsecured, due or to become, contractual or tortious, liquidated or unliquidated, arising by assignment or otherwise, including without limitation all indebtedness, obligations and liabilities owed by accommodation

2

party or otherwise (collectively, the "Indebtedness"); and the undersigned jointly and severally agree to pay on demand all of Scoular's fees, costs, expenses, and attorneys' fees incurred in connection with the indebtedness, any security therefore, this Guaranty and the collection of all amounts due and owing pursuant thereto, plus interest on such amounts at the highest rate then applicable to any indebtedness.

A true and correct copy of the November 30, 2009 Personal Guaranty is attached hereto as Exhibit "A."

10. Following execution of the Personal Guaranty, Scoular routinely sold grain and feed to Farren Dakin Dairy, Inc.

11. Since November 2009, Scoular has had difficulty receiving prompt and proper payment for its grain and feed sales to the Defendants.

12. On July 24, 2018, Defendants, FARREN R. DAKIN, and CHRISTINA M. DAKIN, for and on behalf of the Dairy, executed and delivered to Scoular a Replacement Promissory Note for $140,899.55 (the "Promissory Note"). A true and correct copy of the Promissory Note is attached hereto as Exhibit "B."

13. The first page of the Promissory Note identifies the debtor as "Farren Dakin Dairy, Inc.," however, as of the date of the Promissory Note was executed, Farren Dakin Dairy, Inc. was no longer a viable entity, and its business had been continued by its successor in interest, the Defendant in this case, Dairy. Dairy is the continuation of the business of Farren Dakin Dairy, Inc., performing the same business at the same address under the management of the same individuals. Moreover, when executing the Promissory Note, Farren Dakin crossed out the "Inc." and interlineated "LLC" in its place. As a result, Dairy is liable for the debt evidenced by the Promissory Note.

14.     In addition, as Dairy is the successor in interest to Farren Dakin Dairy, Inc., the Personal Guaranty applies to the Promissory Note.

15.     Scoular remains the owner and holder of the Promissory Note and the Personal Guaranty.

16.     Dairy defaulted on the obligations assumed by it under the Promissory Note by failing to make the monthly payment due and owing on November 1, 2018.

17.     In addition to the foregoing, separate from the Promissory Note, Dairy continued to order grain and feed from Scoular, which Scoular continued to provide.  Examples of Purchase Confirmation orders are attached hereto as Composite Exhibit "C."

18.     Dairy took possession of the grain and feed supplied by Scoular without complaint.

19.     Dairy breached its contractual obligation to pay Scoular for grain and feed that Scoular provided to Dairy.

20.     As of the filing of this Complaint, Dairy owes Scoular over $669,440.41 for grain and feed provided by Scoular and accepted by Dairy.

21.     Despite demand, none of the Defendants have paid any of the sums alleged as due and owing above.  True and correct copies of demand letters sent to the Defendants are attached hereto as Composite Exhibit "D."

22.     FARREN R. DAKIN, and CHRISTINA M. DAKIN have defaulted on the Personal Guaranty by failing to make the payments due and owing as described above, despite demand by Scoular.

23.     Scoular is entitled to an award of attorneys' fees under grounds including, but not limited to: 1) the Promissory Note, which provides that "Payor promises to pay all costs of collection of this Note, including but not limited to attorneys' fees paid or incurred by Payee to

4

outside legal counsel with respect to or on account of such collection," 2) the Personal Guaranty, which provides that "the undersigned jointly and severally agree to pay on demand all of Scoular's fees, costs, expenses, and attorneys' fees incurred in connection with the indebtedness," and 3) the individual Purchase Confirmations, which provide that "Seller shall be entitled to collect from Buyer reasonable attorney's fees incurred by Seller in connection with enforcement of this contract."

24. Scoular is obligated to pay its attorneys a reasonable fee for their services.

25. All conditions precedent to the commencement of this action has been performed, have occurred, or have been waived.

## COUNT I

## BREACH OF THE PROMISSORY NOTE AND PERSONAL GUARANTEE

26. Scoular readopts and realleges the statements contained in Paragraphs 1 through 25.

27. This is an action for damages against Dairy based on its breach of the Promissory Note.

28. On July 24, 2018, Defendant Dairy executed and delivered the Promissory Note to Scoular.

29. The first page of the Promissory Note identifies the debtor as "Farren Dakin Dairy, Inc.," however, as of the date the Promissory Note was executed, Farren Dakin Dairy, Inc. was no longer a viable entity, and its business had been continued by its successor in interest, the Defendant in this case, Dairy.  Dairy is the continuation of the business of Farren Dakin Dairy, Inc., performing the same business at the same address under the management of the same individuals.  Moreover, when executing the Promissory Note, Farren Dakin crossed out the "Inc."

and interlineated "LLC" in its place.  As a result, Dairy is liable for the debt evidenced by the Promissory Note.

30.     Scoular remains the owner and holder of the Promissory Note and the Personal Guaranty.

31.     Dairy defaulted on the obligations assumed by it under the Promissory Note by failing to make the monthly payment due and owing in November 1, 2018.

WHEREFORE, Scoular demands judgment for damages against Dairy for damages, including principal, interest, court costs, reasonable attorneys' fees, and such other relief this Court may deem just and proper.

## COUNT II

## BREACH OF CONTRACT

32.     Scoular readopts and realleges the statements contained in Paragraphs 1 through 31.

33.     This is an action for damages against Dairy for breach of contract.

34.     At all times relevant to the instant Complaint, Farren Dakin Dairy, Inc., operated a dairy.

35.     Scoular is in the business of selling feed for livestock.

36.     Farren Dakin Dairy, Inc. and Scoular entered into a contract under which Scoular would sell feed to Farren Dakin Dairy, Inc.

37.     Scoular sold grain and feed to Farren Dakin Dairy, Inc. under the contract. Examples of Purchase Conformation orders are attached hereto as Composite Exhibit "C."

38.     Dairy took possession of the grain and feed supplied by Scoular without complaint.

39.     Dairy breached its contractual obligation to pay Scoular for grain and feed that Scoular provided to Dairy.

40.     As of the filing of this Complaint, Dairy owes Scoular over $669,440.41 for grain and feed provided by Scoular and accepted by Dairy.

WHEREFORE, Scoular demands judgment for damages against Dairy for damages, including principal, interest, court costs, reasonable attorneys' fees, and such other relief this Court may deem just and proper.

## COUNT III

## ACCOUNT STATED

41.     Scoular readopts and realleges the statements contained in Paragraphs 1 through 40.

42.     This is an action for damages, pled in the alternative, under an account stated.

43.     Prior to the institution of this action, Scoular and Dairy entered an agreement whereby Scoular agreed to sell feed to Dairy.

44.     Scoular upheld its obligations under the contract described above, providing Dairy with feed as requested by Dairy.

45.     Scoular sent Dairy invoices for the feed.

46.     Dairy never challenged the amounts set forth as due and owing in the invoices.

47.     Dairy owes Scoular the sums set forth in the invoices.

WHEREFORE, Scoular demands judgment for damages against Dairy for damages, including principal, interest, court costs, reasonable attorneys' fees, and such other relief this Court may deem just and proper.

## COUNT IV

## OPEN ACCOUNT

48.     Scoular readopts and realleges the statements contained in Paragraphs 1 through 47.

49.     This is an action for damages, pled in the alternative, on an open account.

50.     As noted above, multiple trade contracts exist between Scoular and Dairy.

51.     Under the trade contracts, Dairy agreed to pay Scoular for feed supplied by Scoular.

52.     Scoular sent Dairy invoices for the feed.

53.     Dairy never challenged the amounts set forth as due and owing in the invoices.

54.     Dairy owes Scoular the sums set forth in the invoices.

WHEREFORE, Scoular demands judgment for damages against Dairy for damages, including principal, interest, court costs, reasonable attorneys' fees, and such other relief this Court may deem just and proper.

## COUNT V

## UNJUST ENRICHMENT

55.     Scoular readopts and realleges the statements contained in Paragraphs 1 through 53.

56.     This is an action for damages, pled in the alternative, based on unjust enrichment.

57.     Scoular conferred a benefit on Dairy in the form of providing grain and feed, which Dairy accepted from Scoular and used.

58.     In consideration for Dairy's provision of grain and feed, Dairy agreed to pay Scoular.

59.     Dairy knew of the benefit (the grain and feed) provided by Scoular and accepted (and retained) the grain and feed without complaint or objection.

60.     Dairy accepted and retained the grain and feed knowing that it would be obligated to pay Scoular for it.

61.     The circumstances are such that it would be inequitable for Dairy to retain the benefits provided by Scoular without paying the proper consideration therefor to Scoular.

62.     Scoular has been damaged because it has lost substantial monies due and owing to it for grain and feed supplied to Dairy.

WHEREFORE, Scoular demands judgment for damages against Dairy for damages, including principal, interest, court costs, reasonable attorneys' fees, and such other relief this Court may deem just and proper.

## COUNT VI

## GUARANTY

63.     Scoular readopts and realleges the statements contained in Paragraphs 1 through 62.

64.     This is an action for damages based on Guaranty executed by FARREN R. DAKIN, and CHRISTINA M. DAKIN.

65.     Due to Dairy's failure to pay the amounts owing to Scoular for its purchases of feed in a timely fashion, as a condition to continued sales to Dairy, Scoular, on November 30, 2009, Defendants Farren R. Dakin and Christina M. Dakin (principals of Farren Dakin Dairy, Inc.), agreed to provide and execute a ***continuing*** Personal Guaranty which included the following:

> For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of and to induce financial accommodations of any kind, with or without security, given or to be given or continued at any time and from time to time by the Scoular Company ("Scoular") to or for the account of

Farren Dakin Dairy, Inc., a Florida Corporation ("Customer"), the undersigned absolutely and unconditionally, jointly and severally, guarantee to Scoular the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of any and all indebtedness, obligations and liabilities of the Customer (and any and all successors of Customer) to Scoular, now or hereafter existing, absolute or contingent, independent, joint, several or joint and several, secured or unsecured, due or to become, contractual or tortious, liquidated or unliquidated, arising by assignment or otherwise, including without limitation all indebtedness, obligations and liabilities owed by accommodation party or otherwise (collectively, the "Indebtedness"); and the undersigned jointly and severally agree to pay on demand all of Scoular's fees, costs, expenses, and attorneys' fees incurred in connection with the indebtedness, any security therefore, this Guaranty and the collection of all amounts due and owing pursuant thereto, plus interest on such amounts at the highest rate then applicable to any indebtedness.

66.     As is clear in the preceding Paragraph, the Guaranty was a continuing guaranty of payment by Defendants Farren R. Dakin and Christina M. Dakin of Dairy's obligations to Scoular.

67.     Defendants Farren R. Dakin and Christina M. Dakin are, by virtue of the Guaranty, jointly and severally liable for any sums awarded to Scoular under the Counts alleged above.

68.     Despite demand, Defendants Farren R. Dakin and Christina M. Dakin have refused to honor the Guaranty by paying the sums alleged as due and owing on the Counts set forth hereinabove.

69.     Defendants Farren R. Dakin's and Christina M. Dakin's refusal to pay the sums due and owing to Scoular constitutes a material breach of the Guaranty.

70.     Scoular has been damaged by the breach of the Guaranty because it has provided feed to Dairy and has received no payment therefore.

WHEREFORE, Scoular demands judgment for damages against Dairy, Farren R. Dakin, and Christina M. Dakin, for damages, including principal, interest, court costs, reasonable attorneys' fees, and such other relief this Court may deem just and proper.

Dated this 21st day of October, 2019.

THE SCOULAR COMPANY, INC.,
Plaintiff.

By:    */s/ Alyssa M. Nohren*
Alyssa M. Nohren, Esquire
Florida Bar No. 0352410
ICARD, MERRILL, CULLIS, TIMM, FUREN, &
GINSBERG, P.A.
2033 Main Street, Suite 600
Sarasota, FL 34237
Telephone: (941) 366-8100
Facsimile: (941) 366-6384
anohren@icardmerrill.com

-and-

Marnie A. Jensen (NE# 22380)
*Pro hac vice pending*
Quinn R. Eaton (NE# 26318)
*Pro hac vice pending*
HUSCH BLACKWELL LLP
13330 California St., Ste. 200
Omaha, NE  68154
Telephone: (402) 964-5000
Facsimile:(402) 964-5050
marnie.jensen@huschblackwell.com
quinn.eaton@huschblackwell.com

**Attorneys for The Scoular Company, Inc.**

## PERSONAL GUARANTY

Myakka City, Florida
November ____, 2009

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of and to induce financial accommodations of any kind, with or without security, given or to be given or continued at any time and from time to time by The Scoular Company ("Scoular") to or for the account of Farren Dakin Dairy, Inc, a Florida corporation ("Customer"), the undersigned absolutely and unconditionally, jointly and severally, guarantee to Scoular the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of any and all indebtedness, obligations and liabilities of the Customer (and any and all successors of Customer) to Scoular, now or hereafter existing, absolute or contingent, independent, joint, several or joint and several, secured or unsecured, due or to become, contractual or tortious, liquidated or unliquidated, arising by assignment or otherwise, including without limitation all indebtedness, obligations and liabilities owed by Customer (and all successors of Customer) as principal, surety, endorser, guarantor, accommodation party or otherwise (collectively, the "Indebtedness"); and the undersigned jointly and severally agree to pay on demand all of Scoular's fees, costs, expenses, and attorneys' fees incurred in connection with the Indebtedness, any security therefor, this Guaranty and the collection of all amounts due and owing pursuant hereto, plus interest on such amounts at the highest rate then applicable to any Indebtedness.

Scoular may at any time and from time to time, without consent of the undersigned, without incurring responsibility to the undersigned, without releasing, impairing or affecting the liability of the undersigned hereunder, upon or without any terms or conditions, and in whole or in part: (1) sell, pledge, surrender, compromise, settle, release, renew, subordinate, extend, alter, substitute, exchange, modify or otherwise dispose of or deal with in any manner and in any order any Indebtedness, any evidence thereof, or any security or other guaranty therefor; (2) accept any security for or other guarantors of any Indebtedness; (3) fail, neglect or omit to obtain, realize upon or protect any Indebtedness or any security therefor, or to exercise any other right against the Customer, any of the undersigned, any other guarantor or any other person; and (4) apply any payments and credits to the Indebtedness in any manner and in any order. No act, omission or thing, except full payment and discharge of the Indebtedness, which but for this provision could act as a release or impairment of the liability of the undersigned hereunder, shall in any way release, impair or otherwise affect the liability of the undersigned hereunder, and each of the undersigned waives any and all defenses of the Customer pertaining to the Indebtedness, any evidence thereof, and any security therefor, except the defense of discharge by payment. The failure of any person or persons to sign this or any other guaranty shall not release, impair or affect the liability of either undersigned hereunder. This Guaranty is a primary obligation of each of the undersigned and Scoular shall not be required to first resort for payment of the Indebtedness to the Customer or any other person, their properties or estates, or any security or other rights or remedies whatsoever. Each of the undersigned shall be and remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing the Indebtedness, whether or not the liability of Customer or any other person for such deficiency is discharged pursuant to statute, judicial decision or otherwise.

The liability of each of the undersigned under this Guaranty is in addition to and shall be cumulative with all other liabilities of each of the undersigned to Scoular, as guarantor or otherwise, without any limitation as to amount, unless the writing evidencing or creating such

EXHIBIT
A

other liability specifically provides to the contrary. If any payment applied by Scoular to the indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including without limitation the bankruptcy, insolvency or reorganization of the Customer or any other person), the indebtedness to which such payment was applied shall for purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty shall be enforceable as to such indebtedness as fully as if such application had never been made.

Each of the undersigned waives: (1) notice of acceptance of this Guaranty and of the creation and existence of indebtedness; and (2) presentment, demand for payment, and protest of any instrument evidencing the indebtedness. Each of the undersigned consents to the personal jurisdiction of the state and federal courts located in the State of Nebraska in connection with any controversy related to this Guaranty, waives any argument the venue in such forums is not convenient, and agrees that any litigation initiated by the undersigned against Scoular in connection with this Guaranty shall be venued in either the state or federal courts located in Douglas County, Nebraska.

Each of the undersigned hereby agrees that Scoular shall have no duty to advise the undersigned of information now or hereafter known to Scoular regarding the financial or other condition of the Customer or any other person primarily or secondarily liable on the indebtedness or regarding any circumstance bearing on the risk of nonpayment of the indebtedness. Each of the undersigned acknowledges and agrees that the undersigned has conducted his or her own investigation of the business and affairs of the Customer and any person primarily or secondarily liable on the indebtedness to his or her satisfaction, has not relied and will not rely on any information provided by Scoular in determining whether to enter into or continue the Guaranty, and is and will continue to remain informed of the Customer's financial condition, the status and financial condition of other guarantors, if any, and all other circumstances which bear upon the risk of nonpayment of the indebtedness.

All property of each of the undersigned, now or hereafter in the possession, control or custody of or in transit to Scoular for any purpose, including without limitation the balance of every account of each of the undersigned with each claim of the undersigned against Scoular, shall be subject to a lien and security interest in favor of Scoular, as security for all liabilities of each of the undersigned to Scoular, and shall be subject to be set off against any and all such liabilities, and Scoular may at any time and from time to time at its option, appropriate and apply any such property toward the payment of any and all such liabilities. Each of the undersigned agrees promptly to provide Scoular from time to time with current signed personal financial statements of himself or herself, in form and substance acceptable to Scoular, at least once every twelve months and as otherwise requested by Scoular. Each of the undersigned agrees promptly to provide Scoular from time to time with such other information respecting the condition (financial and otherwise), business and property of himself or herself as Scoular may request, in form and substance acceptable to Scoular.

Each of the undersigned waives all claims, rights and remedies which he or she may now have or hereafter acquire against any person at any time now or hereafter liable for payment of any indebtedness and as to any collateral security, including but not limited to all claims, rights and remedies of contribution, indemnification, exoneration, reimbursement, recourse and subrogation, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise, whether or not the indebtedness has been fully paid; provided, however, that nothing contained in this Guaranty shall deprive each of the

01/03/2006  01:29    9413222136              DAKIN                              PAGE  04/04

undersigned of any claim, right or remedy after the indebtedness has been fully paid, against any person other than Scoular. No delay or failure by Scoular in exercising any right, and no partial or single exercise thereof shall constitute a waiver thereof. No waiver of any rights hereunder, and no modification or amendment of the Guaranty shall be effective unless the same is in writing duly executed by Scoular, and each such waiver, if any, shall apply only with respect to the specific instance involved and shall not impair or affect the rights of Scoular or the provisions of the Guaranty in any other respect at any other time. This Guaranty shall continue until written notice of revocation of this Guaranty, executed by both of the undersigned, has been received by Scoular; provided, no revocation of this Guaranty shall affect in any manner any liability of each of the undersigned under this Guaranty with respect to indebtedness arising before Scoular receives such written notice of revocation, and the sole effect of revocation of this Guaranty shall be to exclude from this Guaranty indebtedness thereafter arising which is unconnected with indebtedness theretofore arising or transactions theretofore entered into.

Any invalidity or unenforceability of any provision or application of this Guaranty shall not affect other lawful provisions and applications hereof and to this end the provisions of this Guaranty are declared to be severable. This Guaranty shall bind each of the undersigned and his or her heirs, representatives, successors and assigns, and shall benefit Scoular, its successors and assigns. If there are two or more guarantors to this Guaranty, the obligations shall be joint and several and binding upon and inure to the benefit of the parties, their successors, assigns and personal representatives. This Guaranty shall be governed by and construed in accordance with the laws of the State of Nebraska.

EACH OF THE UNDERSIGNED REPRESENTS, CERTIFIES, WARRANTS AND AGREES THAT HE OR SHE HAS READ ALL OF THIS GUARANTY AND UNDERSTANDS ALL OF THE PROVISIONS OF THIS GUARANTY. EACH OF THE UNDERSIGNED ALSO AGREES THAT COMPLIANCE BY SCOULAR WITH THE EXPRESS PROVISIONS OF THIS GUARANTY SHALL CONSTITUTE GOOD FAITH AND SHALL BE CONSIDERED REASONABLE FOR ALL PURPOSES.


Farren R. Dakin
40102 State Road 70 E.
Myakka City, Florida 34251


Date: 11 - 30 - 09, 2009


Christina M. Dakin
40102 State Road 70 E.
Myakka City, Florida 34251


Date: 11/30        , 2009

## REPLACEMENT PROMISSORY NOTE

**$140,899.55**                                                      July 24/2018

FOR VALUE RECEIVED, the undersigned, Farren Dakin Dairy, Inc., a Florida corporation and Farren Dakin, an individual, at 40102 SR 70 East, Myakka City, FL 34251 (collectively, the "Payor") promises to pay to the order of The Scoular Company ("Payee"), at 2027 Dodge Street, Omaha, Nebraska 68102, or at such other place as Payee may designate in writing from time to time, the sum of One Hundred Forty Thousand Eight Hundred Ninety-Nine and 55/100 Dollars ($140,899.55) in lawful money of the United States and immediately available funds, together with interest thereon at the rate of five percent (5%) per annum until paid in full in accordance herewith.

The entire principal amount of this Note, together with all accrued and unpaid interest thereon, shall be paid in installments in the amounts and due dates in accordance with the following schedule (i) commencing August 1, 2018 to and including October 1, 2018, monthly payments of accrued interest only will be due on the first day of each month; and (ii) commencing November 1, 2018 and on the first day of each month thereafter until the full principal amount of this Note together with accrued interest is paid in full, monthly installments of principal of $25,000 plus accrued interest will be due on the first day of each month.

Notwithstanding the above, Payor shall pay to Payee the full principal amount of this Note, together with all accrued and unpaid interest thereon not later than April 1, 2019.  Any and all payments on this Note shall be applied first to any costs of collection, second to accrued interest, and third to the reduction of principal.

Payee will have the right to prepay the Loans represented by this Note in whole, or in part, at any time without penalty.

Upon the request of Payee, Payor shall provide Payee with copies of his current financial statements, including, without limitation, statements of income and expense and balance sheets.

As used herein, the term "Event of Default" shall mean and include any one or more of the following events:  (a) Payor shall fail to pay when due any amounts required to be paid hereunder or any other indebtedness of Payor to Payee, whether any such indebtedness is now existing or hereafter arises and whether direct or indirect, due or to become due, absolute or contingent, and such failure shall continue for more than five days after receiving notice of the same (provided, however, that no such event of default shall be deemed to exist if the total amount paid by Payor to Payee under this Note as of the date such amount is due and owing equals or exceeds the total monthly installments to be paid by Payor to Payee under this Note as of and including such date); (b) Payor shall fail to observe or perform any covenant, condition or agreement to be observed or performed by him under this Note or any other agreement between Payor and Payee, and such failure shall continue for more than five days after receiving notice of the same; (c) Payor shall file or have filed against him a petition in bankruptcy or for reorganization or for an arrangement pursuant to any present or future state or federal bankruptcy act or any similar state or federal law, or shall be adjudicated a bankrupt or insolvent, or shall make a general assignment for the benefit of creditors, or shall be unable to pay debts generally as they become due, or shall have a receiver, trustee or liquidator appointed over him or his assets, or if any property of Payor shall be levied upon or attached in any proceeding; (d) final judgment(s) for the payment of money shall be rendered against Payor and shall remain undischarged for a period of sixty (60) days; (e) any representation or warranty made by Payor herein or in any other agreement between Payor and Payee shall prove to be untrue or misleading in any material respect; or (f) Payor shall liquidate, terminate, dissolve, suspend his business operations, or in the case of any individual, die.

**EXHIBIT B**

Upon the occurrence of an Event of Default or at any time thereafter:  (a) the outstanding principal balance hereof and all other amounts due hereunder shall, at the option of Payee, become immediately due and payable, without notice or demand; (b) Payee shall have the right to set off any and all amounts due hereunder by Payor to Payee against any indebtedness or obligation of Payee to Payor; (c) Payor promises to pay all costs of collection of this Note, including but not limited to attorneys' fees paid or incurred by Payee to outside legal counsel with respect to or on account of such collection, whether or not suit is filed with respect thereto and whether such cost or expense is paid or incurred, or to be paid or incurred; and (d) Payee shall have any and all rights and remedies allowed by law or in equity.

Demand, presentment for payment, protest, and notice of protest and nonpayment of this Note are hereby waived by Payor.

No renewal or extension of this Note, delay in enforcing any right of Payee under this Note, or assignment by Payee of this Note shall affect the liability of Payor.  All rights of Payee under this Note are cumulative and may be exercised concurrently or consecutively at Payee's sole option. If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.  This Note may not be modified, changed or amended orally, but only by an agreement in writing and signed by both parties hereto.

This Note shall be construed and enforced in accordance with the laws of the State of Nebraska.  Payor consents to the personal jurisdiction of the state and federal courts located in the State of Nebraska in connection with any controversy related to this Note, waives any argument the venue in such forum is not convenient, and agrees that any litigation initiated by Payor against Payee in connection with this Note shall be venued in either the state or federal courts located in Douglas County, Nebraska.  Payor hereby irrevocably waives, to the fullest extent he may effectively do so, the right to trial by jury.  Payor hereby agrees that judgment made final by appeal, or by expiration of time to appeal without an appeal being taken in any such action or proceeding, shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law.

Payor represents and warrants to Payee that Payor has full power and authority to enter into and perform his obligations under this Note, and this Note constitutes the legal, valid and binding obligation of Payor, enforceable against him in accordance with its terms.  If this Note is executed by more than one party, the obligations and liabilities of each Payor under this Note shall be joint and several and shall be binding upon and enforceable against each Payor and their respective successors and assigns.

This Replacement Promissory Note constitutes a replacement and refinancing of, and substitute for the Promissory Note dated November 9, 2017, executed by the undersigned and payable to the order of The Scoular Company in the original principal amount of Two Hundred Nine Thousand and four and 06/100 Dollars ($209,004.06) (the "Original Note").

Upon the undersigned's execution of this Replacement Note, Scoular shall mark the Original Note "cancelled".

Signed this ___ day of July, 2018 at Myakka City, Florida.

_Farren Dakin_

Farren Dakin

Farren Dakin Dairy, ~~Inc.~~ *L L C.*

By: _____ *C ong LLC*
Its: _____





4050
001

SALE CONTRACT NUMBER    SC 890327

YOUR CONTRACT NUMBER
CONTRACT DATE    7/24/18

THE SCOULAR COMPANY
1800 2ND STREET  SUITE 802
SARASOTA    FL 34236
PHONE: 800-365-0524

**SALE CONFIRMATION**

BROKER

SOLD TO:
    FARREN DAKIN DAIRY, LLC
    40102 SR 70 EAST
    P.O. BOX 7
    MYAKKA CITY    FL 34251

DAKIMYF

| | |
|---|---|
| COMMODITY AND GRADE | GROUND CORN |
| QUANTITY | 45 TRUCK(S) |
| PRICE | 69.65000 PER ST OVER    CBOT    JULY    U.S.FUNDS |
| DELIVERY BASIS | MYAKKA CITY, FL |
| SHIPMENT PERIOD | MAY-JUNE, 2019 |
| WEIGHTS TO GOVERN | ORIGIN WEIGHTS |
| INSPECTION TO GOVERN | NOT APPLICABLE |
| PREMIUM/DISCOUNT SCALE | NOT APPLICABLE |
| GOVERNING TRADE RULES | NATL GRAIN & FEED |
| ROUTING | TRUCK |
| PAYMENT TERMS | NET CASH RECPT/INV. |

REMARKS:    PLEASE SIGN AND RETURN ONE COPY TO US.  FAX #941-365-0524, OR BY
    E-MAIL - APDDG@SCOULAR.COM
    TERMS PAYMENT DUE UPON RECEIPT

## SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS

Seller warrants ONLY that the goods sold are of merchantable quality and Buyer expressly waives all other warranties whether provided by law or otherwise.  THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED.  Seller shall in no event be liable for consequential damages and Seller's total liability shall not exceed the purchase price of the goods upon which claim is made.
Receipt of this confirmation by Buyer, without written notice to Seller of objection or error within ten days, is an acknowledgement of the acceptance of all conditions hereof.
Errors and omissions excepted.
Please sign one copy and return it to us.

FARREN DAKIN DAIRY, LLC

BY X _Farren Dakin_    _10-8-18_
    Buyer Signature    Date

THE SCOULAR COMPANY

BY _Sarabeth Simmons_
    Sarabeth Simmons

**EXHIBIT
C**

This confirmation constitutes the complete agreement between the parties which cannot be changed in any manner except in writing and signed by Seller's authorized agents. In case of any inconsistency between Buyer's and Seller's contracts or confirmations, Seller's confirmation governs.

Seller shall in no case be held responsible for demurrage or storage charges at destination for any delay in or failure of delivery arising from strikes, labor difficulty, civil disorder, railcar shortage, embargo, war, Act of God, or any other cause or condition beyond Seller's reasonable control. Failure of Seller to deliver any installment when due shall not constitute a breach of the whole contract or as to any subsequently due installment. Whenever a supply shortage occurs which is beyond the reasonable control of Seller, Seller reserves the right to allocate its supplies among its customers in its absolute discretion without obligation to Buyer except for return of monies paid for goods not delivered. Buyer will accept grain received after contract time unless prior to time of shipment cancellation of this sale is mutually agreed upon and written confirmation thereof is received at Seller's office at address stated on face hereof.

When shipment is to be made within a specified number of days, Sundays and legal holidays at point of shipment shall not be included.

If the contract provides for delivery of goods more than 14 days after the date of its confirmation, Seller may demand from Buyer at any time during the terms of the contract, a deposit equal to 10% of the gross contract price for goods undelivered plus the difference between the contract price and market price for such undelivered goods. The said deposit shall be held by Seller and applied without interest against Buyer's account as goods are delivered so as to maintain the deposit in amounts herein set forth. Any balance remaining upon termination of the contract and payment of Buyer's account in full shall be refunded to Buyer without interest. Failure of Buyer to pay the required deposit to Seller upon demand shall be a default and entitle Seller to exercise all remedies provided by law and by this confirmation.

Unless otherwise specifically stated in writing hereon, the price as set forth in this confirmation is based on freight rates in effect on the date hereof and any increase in freight rates is for the account of Buyer.

Buyer represents that it is not insolvent as that term is defined in the Uniform Commercial Code. If Buyer's financial condition is found to be or becomes unsatisfactory to Seller during the term of the contract, Seller may at its option terminate the contract and any other contracts between Buyer and Seller whether or not Buyer may otherwise be in default. No rights or causes of action shall accrue to Buyer as a result of such termination.

Except as otherwise specified herein, the parties agree that all disputes and controversies of any nature whatsoever with respect to the contract hereby confirmed shall be arbitrated according to the Arbitration Rules of the National Grain and Feed Association whether or not Buyer is a member thereof. The parties further agree that the decision and award determined in such arbitration shall be final and binding on all parties, and judgment upon the award may be entered and enforced in any court having jurisdiction thereof.

Demand drafts for advance or for payment in full are to be paid upon presentment with proper documents attached. All invoices are due immediately upon receipt. Seller reserves the right any time during the contract terms to require payment by demand draft accompanied by supporting documents notwithstanding prior sales or installments to Buyer on open account. Acceptance by Seller of any payment from Buyer shall not constitute a release of claims or accord and satisfaction unless Seller has so agreed in writing separate from the instrument of payment.

Upon any breach of contract by Buyer or termination of contract by Seller, Seller at its option may; (1) resell the goods in the open market for Buyer's account, Buyer to pay Seller any loss and incidental expense resulting therefrom but without obligation to Buyer for any excess realized on such resale; (2) require Buyer to pay the difference between the contract price and the market price as of the date of cancellation in the market on which the contract is based; or (3) cancel the contract in its entirety without further obligation to Buyer. In addition to and without limitation by the foregoing, Seller may have and pursue any remedy allowed by law and (i) Seller shall be entitled to collect from Buyer reasonable attorney's fees incurred by Seller in connection with enforcement of this contract and (ii) Seller shall be entitled to collect from Buyer interest on any amount owed by Buyer to Seller at a rate equal to three percent (3%) in excess of the prime rate of interest charged by the Chase Manhattan Bank of New York from the date said amount first became due or Buyer's liability first accrued until fully paid. If the aforesaid interest rate exceeds any applicable maximum lawful rate, then interest shall accrue at said maximum lawful rate on amounts and for the time aforesaid. Failure on the part of Seller to exercise any remedy upon Buyer's default as to a single installment shall not constitute a waiver of any subsequent default by Buyer.





4050
001

SALE CONTRACT NUMBER | SC 890326

YOUR CONTRACT NUMBER

CONTRACT DATE    7/24/18

THE SCOULAR COMPANY
1800 2ND STREET  SUITE 802
SARASOTA    FL 34236
PHONE: 800-365-0524

*SALE CONFIRMATION*

BROKER

SOLD TO:    FARREN DAKIN DAIRY, LLC          DAKIMYF
40102 SR 70 EAST
P.O. BOX 7
MYAKKA CITY    FL 34251

| | |
|---|---|
| COMMODITY AND GRADE | GROUND CORN |
| QUANTITY | 40 TRUCK(S) |
| PRICE | 69.65000 PER ST OVER    CBOT    MAY    U.S.FUNDS |
| DELIVERY BASIS | MYAKKA CITY, FL |
| SHIPMENT PERIOD | MARCH-APRIL, 2019 |
| WEIGHTS TO GOVERN | ORIGIN WEIGHTS |
| INSPECTION TO GOVERN | NOT APPLICABLE |
| PREMIUM/DISCOUNT SCALE | NOT APPLICABLE |
| GOVERNING TRADE RULES | NATL GRAIN & FEED |
| ROUTING | TRUCK |
| PAYMENT TERMS | NET CASH RECPT/INV. |

REMARKS:    PLEASE SIGN AND RETURN ONE COPY TO US.  FAX #941-365-0524, OR BY
E-MAIL - APDDG@SCOULAR.COM
TERMS PAYMENT DUE UPON RECEIPT

## SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS

Seller warrants ONLY that the goods sold are of merchantable quality and Buyer expressly waives all other warranties whether provided by law or otherwise.  THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED.  Seller shall in no event be liable for consequential damages and Seller's total liability shall not exceed the purchase price of the goods upon which claim is made.
Receipt of this confirmation by Buyer, without written notice to Seller of objection or error within ten days, is an acknowledgement of the acceptance of all conditions hereof.
Errors and omissions excepted.
Please sign one copy and return it to us.

FARREN DAKIN DAIRY, LLC                                    THE SCOULAR COMPANY

BY X _Farren Ehm_        _10-3-18_        BY _Sarabeth B Simmons_
Buyer Signature              Date

Sarabeth Simmons




4050
001

SALE CONTRACT NUMBER    SC 890327

THE SCOULAR COMPANY
1800 2ND STREET  SUITE 802
SARASOTA    FL 34236
PHONE: 800-365-0524

YOUR CONTRACT NUMBER
CONTRACT DATE    7/24/18

*SALE CONFIRMATION*

BROKER

SOLD TO:
FARREN DAKIN DAIRY, LLC
40102 SR 70 EAST
P.O.BOX 7
MYAKKA CITY   FL  34251

DAKIMYF

| | |
|---|---|
| COMMODITY AND GRADE | GROUND CORN |
| QUANTITY | 45 TRUCK(S) |
| PRICE | 69.65000 PER ST OVER   CBOT   JULY   U.S.FUNDS |
| DELIVERY BASIS | MYAKKA CITY, FL |
| SHIPMENT PERIOD | MAY-JUNE, 2019 |
| WEIGHTS TO GOVERN | ORIGIN WEIGHTS |
| INSPECTION TO GOVERN | NOT APPLICABLE |
| PREMIUM/DISCOUNT SCALE | NOT APPLICABLE |
| GOVERNING TRADE RULES | NATL GRAIN & FEED |
| ROUTING | TRUCK |
| PAYMENT TERMS | NET CASH RECPT/INV. |

REMARKS:   PLEASE SIGN AND RETURN ONE COPY TO US.  FAX #941-365-0524, OR BY
E-MAIL - APDDG@SCOULAR.COM
TERMS PAYMENT DUE UPON RECEIPT

SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS

Seller warrants ONLY that the goods sold are of merchantable quality and Buyer expressly waives all other warranties whether provided by law or
otherwise.  THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED.  Seller shall in no event be liable for consequential damages and
Seller's total liability shall not exceed the purchase price of the goods upon which claim is made.
Receipt of this confirmation by Buyer, without written notice to Seller of objection or error within ten days, is an acknowledgement of the acceptance of all
conditions hereof.
Errors and omissions excepted.
Please sign one copy and return it to us.

FARREN DAKIN DAIRY, LLC                              THE SCOULAR COMPANY

BY X _Farren Dakin_        _10-8-18_          BY _Sarabeth Simmons_
        Buyer Signature            Date
                                                                          Sarabeth Simmons



4050
001

SALE CONTRACT NUMBER   SE 890827

YOUR CONTRACT NUMBER
CONTRACT DATE   10/18/18

## SALE CONFIRMATION

THE SCOULAR COMPANY
1800 2ND STREET  SUITE 802
SARASOTA      FL 34236
PHONE:  941-365-0090

BROKER

DAKIMYF

SOLD TO:   FARREN DAKIN DAIRY, LLC
40102 SR 70 EAST
P.O.BOX 7
MYAKKA CITY    FL  34251

| | |
|---|---|
| COMMODITY AND GRADE | SOYPLUS HEDGEABLE |
| QUANTITY | 4 TRUCK(S) |
| PRICE | 388.60000 PER ST           U.S.FUNDS |
| DELIVERY BASIS | MYAKKA CITY, FL |
| SHIPMENT PERIOD | APRIL-MAY, 2019 |
| WEIGHTS TO GOVERN | ORIGIN WEIGHTS |
| INSPECTION TO GOVERN | NOT APPLICABLE |
| PREMIUM/DISCOUNT SCALE | NOT APPLICABLE |
| GOVERNING TRADE RULES | NATL GRAIN & FEED |
| ROUTING | TRUCK |
| PAYMENT TERMS | NET CASH RECPT/INV. |

REMARKS:   PLEASE SIGN AND RETURN ONE COPY TO US.  FAX #941-365-0524, OR BY
E-MAIL - APDDG@SCOULAR.COM
TERMS PAYMENT DUE UPON RECEIPT

## SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS

Seller warrants ONLY that the goods sold are of merchantable quality and Buyer expressly waives all other warranties whether provided by law or
otherwise.  THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED.  Seller shall in no event be liable for consequential damages and
Seller's total liability shall not exceed the purchase price of the goods upon which claim is made.

Please sign one copy and return it to us

FARREN DAKIN DAIRY, LLC

THE SCOULAR COMPANY

*Farren Dakin*
Farren Dakin (Mar 19, 2019)
Buyer Signature

*Sarabeth Barttett Simmons*
Sarabeth Simmons

This confirmation constitutes the complete agreement between the parties which cannot be changed in any manner except in writing and signed by Seller's authorized agents. In case of any inconsistency between Buyer's and Seller's contracts or confirmations, Seller's confirmation governs.

Seller shall in no case be held responsible for demurrage or storage charges at destination for any delay in or failure of delivery arising from strikes, labor difficulty, civil disorder, railcar shortage, embargo, war, Act of God, or any other cause or condition beyond Seller's reasonable control. Failure of Seller to deliver any installment when due shall not constitute a breach of the whole contract or as to any subsequently due installment. Whenever a supply shortage occurs which is beyond the reasonable control of Seller, Seller reserves the right to allocate its supplies among its customers in its absolute discretion without obligation to Buyer except for return of monies paid for goods not delivered. Buyer will accept grain received after contract time unless prior to time of shipment cancellation of this sale is mutually agreed upon and written confirmation thereof is received at Seller's office at address stated on face hereof.

When shipment is to be made within a specified number of days, Sundays and legal holidays at point of shipment shall not be included.

If the contract provides for delivery of goods more than 14 days after the date of its confirmation, Seller may demand from Buyer at any time during the terms of the contract, a deposit equal to 10% of the gross contract price for goods undelivered plus the difference between the contract price and market price for such undelivered goods. The said deposit shall be held by Seller and applied without interest against Buyer's account as goods are delivered so as to maintain the deposit in amounts herein set forth. Any balance remaining upon termination of the contract and payment of Buyer's account in full shall be refunded to Buyer without interest. Failure of Buyer to pay the required deposit to Seller upon demand shall be a default and entitle Seller to exercise all remedies provided by law and by this confirmation.

Unless otherwise specifically stated in writing hereon, the price as set forth in this confirmation is based on freight rates in effect on the date hereof and any increase in freight rates is for the account of Buyer.

Buyer represents that it is not insolvent as that term is defined in the Uniform Commercial Code. If Buyer's financial condition is found to be or becomes unsatisfactory to Seller during the term of the contract, Seller may at its option terminate the contract and any other contracts between Buyer and Seller whether or not Buyer may otherwise be in default. No rights or causes of action shall accrue to Buyer as a result of such termination.

Except as otherwise specified herein, the parties agree that all disputes and controversies of any nature whatsoever with respect to the contract hereby confirmed shall be arbitrated according to the Arbitration Rules of the National Grain and Feed Association whether or not Buyer is a member thereof. The parties further agree that the decision and award determined in such arbitration shall be final and binding on all parties, and judgment upon the award may be entered and enforced in any court having jurisdiction thereof.

Demand drafts for advance or for payment in full are to be paid upon presentment with proper documents attached. All invoices are due immediately upon receipt. Seller reserves the right any time during the contract terms to require payment by demand draft accompanied by supporting documents notwithstanding prior sales or installments to Buyer on open account. Acceptance by Seller of any payment from Buyer shall not constitute a release of claims or accord and satisfaction unless Seller has so agreed in writing separate from the instrument of payment.

Upon any breach of contract by Buyer or termination of contract by Seller, Seller at its option may; (1) resell the goods in the open market for Buyer's account, Buyer to pay Seller any loss and incidental expense resulting therefrom but without obligation to Buyer for any excess realized on such resale; (2) require Buyer to pay the difference between the contract price and the market price as of the date of cancellation in the market on which the contract is based; or (3) cancel the contract in its entirety without further obligation to Buyer. In addition to and without limitation by the foregoing, Seller may have and pursue any remedy allowed by law and (i) Seller shall be entitled to collect from Buyer reasonable attorney's fees incurred by Seller in connection with enforcement of this contract and (ii) Seller shall be entitled to collect from Buyer interest on any amount owed by Buyer to Seller at a rate equal to three percent (3%) in excess of the prime rate of interest charged by the Chase Manhattan Bank of New York from the date said amount first became due or Buyer's liability first accrued until fully paid. If the aforesaid interest rate exceeds any applicable maximum lawful rate, then interest shall accrue at said maximum lawful rate on amounts and for the time aforesaid. Failure on the part of Seller to exercise any remedy upon Buyer's default as to a single installment shall not constitute a waiver of any subsequent default by Buyer.



The Scoular Company
250 Marquette Ave, Suite 1050
Minneapolis, MN 55401
612-851-3786
kbedore@scoular.com
www.scoular.com

July 10, 2019

Farren Dakin Dairy, Inc.,
40102 SR 70 East
Myakka City, FL 34251
Attn:  Farren Dakin

Re:  Past Due Account

Dear Mr. Dakin,

I am sending this letter to you in demand of the past due account of Farren Dakin Dairy, Inc.
("Company") owed to The Scoular Company for grain and feed purchases.  A copy of the statement of
account is attached.   As of today, the past due amount is $535,198.44.

The Company must remit payment of the full $535,198.44 on July 19, 2019.  If Scoular is not in receipt
of the full amount on or before the close of business of that day, we will be forced to take legal action
to collect the amount from the Company.

Sincerely,

Karen E. Bedore
Associate General Counsel

Enclosure
cc:     Brandon English
        Jim Harding

**EXHIBIT**
**D**



The Scoular Company
250 Marquette Ave, Suite 1050
Minneapolis, MN 55401
612-851-3788
kbedore@scoular.com
www.scoular.com

July 10, 2019

Farren Dakin
40102 SR 70 East
Myakka City, FL 34251 – Past Due Account

Re:  Promissory Note – Past Due

Dear Mr. Dakin,

By this notice, I am making a formal demand for payment by you of the full unpaid balance of that certain Promissory Note, dated July 24, 2018, in the original principal amount of $140,899.55, made payable to The Scoular Company ("Note").  The unpaid principal balance of the Note, together with all accrued interest, must be paid by July 19, 2019 to The Scoular Company.

Please contact me at the address and phone number above in order to initiate the payment process. If full payment is not received by close of business on July 19, 2019, we will take legal action to collect on the Note.

Sincerely,

Karen E. Bedore
Associate General Counsel

cc:     Brandon English
        Jim Harding